IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>vs. )<br>)<br>KENNETH J. JOHNSON, )<br>)<br>Defendant. )<br>_____ ) | No. 2:07-cr-0924-DCN-3<br><br>**ORDER** |

This matter is before the court on defendant Kenneth J. Johnson's ("Johnson") motion to reduce sentence, ECF No. 997. For the reasons set forth below, the court grants the motion in part and reduces Johnson's sentence.

## I.  BACKGROUND

On November 14, 2007, Johnson was named as one of twelve co-defendants in a fourteen-count superseding indictment. ECF No. 211. That indictment charged Johnson with conspiracy to possess with the intent to distribute five kilograms or more of cocaine and 50 grams or more of cocaine base, in violation of 21 U.S.C. § 846 ("Count One") and possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) ("Count Three"). On March 18, 2008, the government filed a notice of enhanced penalties pursuant 21 U.S.C. § 851, informing Johnson that he was subject to increased penalties based on two prior drug-related convictions. The enhancements left Johnson subject to a mandatory minimum sentence of life imprisonment for Count One.

Johnson's trial began on June 30, 2008. On July 2, 2008, a jury found Johnson guilty on both counts. ECF No. 568. On March 13, 2009, the court sentenced Johnson to life imprisonment as to Count One and a term of imprisonment of 360 months as to Count Three. ECF No. 735. These sentences run concurrently. Johnson filed an appeal

1

with the United States Court of Appeals for the Fourth Circuit, which, on January 31, 2011, affirmed Johnson's conviction and sentence. United States v. Johnson, 415 Fed. App'x 495 (4th Cir. 2011).

On May 7, 2019, Johnson filed a pro se motion to reduce his sentence under § 404 of the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194, 5222 (2018). ECF No. 997. On July 8, 2020, Johnson, through court-appointed counsel, supplemented his motion, providing additional support for his argument under the First Step Act and adding a request for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 1015. The government responded in opposition to the motion and supplement on September 22, 2020. ECF No. 1033. On October 7, 2020, Johnson filed a reply, informing the court that he had contracted COVID-19. ECF No. 1035. On December 21, 2020, Johnson filed another supplement to his motion, this time proceeding pro se. ECF No. 1042. On January 27, 2021, Johnson supplemented his motion once more with additional supporting documents. ECF No. 1044. As such, the motion has been fully briefed and is now ripe for the court's review.

## II. STANDARD

Generally, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Section 3582(c)(1)(A) provides an exception to this general rule, permitting courts to "reduce [a] term of imprisonment" where "extraordinary and compelling reasons warrant such a reduction." Courts refer to requests under this section as motions for "compassionate relief." United States v. Norris, 2020 WL 2110640, at *1 (E.D.N.C. Apr. 30, 2020). Prior to the First Step Act, the law permitted only the Bureau of Prisons ("BOP") to file motions for compassionate

2

relief. United States v. Dowdell, 669 F. App'x 662 (4th Cir. 2016). Section 603 of the First Step Act amended § 3582(c)(1)(A)(i), authorizing defendants themselves to file requests for compassionate relief with the sentencing court after exhausting available administrative remedies. United States v. Griggs, 462 F. Supp. 3d 610, 615 (D.S.C. 2020).

The determination of whether "extraordinary and compelling circumstances" warrant relief is within the discretion of the district court. United States v. Beck, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019). The Fourth Circuit recently clarified that district courts are empowered to "consider any extraordinary and compelling reason for release that a defendant might raise." United States v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020) (quoting United States v. Brooker, 976 F.3d 228, 230 (2d Cir. 2020)) (emphasis in original). If the court finds that such circumstances warrant a reduction in a defendant's sentence, it must "consider the factors set forth in [18 U.S.C.] § 3553(a)" to determine whether such a reduction is justified. 18 U.S.C. § 3582(c)(1)(A)(i). A compassionate relief defendant "has the burden of establishing that such relief is warranted." Griggs, 462 F. Supp. 3d at 615. Even after the changes to § 3582(c)(1)(A)(i) promulgated under the First Step Act, that burden remains "exceptionally high." McCoy, 981 F.3d at 288.

### III.   DISCUSSION

#### A. Relief Under the First Step Act

Johnson makes two requests to the court. First, in a pro se motion, Johnson argues that he is "eligible for [a] resentencing under the First Step Act." ECF No. 997 at 1. Johnson explains that the First Step Act altered 21 U.S.C. § 851, under which he received a mandatory minimum sentence of life imprisonment, such that the enhancement

would now apply a 15-year mandatory minimum sentence rather than life. Indeed, § 401 of the First Step Act redefined the predicate offenses that trigger a sentence enhancement under § 851 by requiring that a predicate drug conviction be for a "serious drug felony." First Step Act § 401(a)(2), 132 Stat. at 5194; 21 U.S.C. § 841(b)(1)(A). 21 U.S.C. § 802(57) sets out the new definition for this term:

> The term "serious drug felony" means an offense described in section 924(e)(2) of Title 18 for which—
>
> (A) the offender served a term of imprisonment of more than 12 months; and
>
> (B) the offender's release from any term of imprisonment was within 15 years of the commencement of the instant offense.

Johnson's § 851 enhancement, for which he faced a mandatory minimum of life imprisonment, was premised upon two previous convictions. See ECF No. 729 at ¶ 5. The first, a 1992 conviction for "conspiracy to possess with intent to distribute and distribution of cocaine," remains a valid predicate "serious violent felony," triggering a 15-year mandatory minimum sentence under §§ 851 and 841(b)(1)(A) ("If any person commits such a violation after a prior conviction for a serious drug felony or serious violent felony has become final, such person shall be sentenced to a term of imprisonment of not less than 15 years . . . ."). The second, however, a 1987 conviction for "sale or delivery of a controlled substance," would no longer serve as a valid predicate offense under the changes to §§ 841 and 851. As he points out, Johnson was released from prison in 1989 for that conviction, around 17 years prior to the conduct from which his current conviction arose. Therefore, Johnson's 1987 conviction no longer satisfies 21 U.S.C. § 802(57)(B), meaning that it would not trigger an additional § 851 enhancement if Johnson were sentenced today. Accordingly, under the new sentencing

regime brought about by the First Step Act, Johnson would face a statutory mandatory minimum sentence of 15 years, rather than one mandating life.

Courts are split as to whether defendants in Johnson's position are entitled to relief under the First Step Act. On the one hand, Congress explicitly noted that the First Step Act's changes to §§ 851 and 841(b)(1)(A) are not retroactively applicable to final convictions. See First Step Act, § 401(c), 132 Stat at 5194 ("This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment.") (emphasis added). On that basis, many courts, including this one, have found that defendants sentenced according to § 851 cannot obtain relief under the First Step Act. See United States v. Brightman, No. 2:03-cr-0627-DCN, ECF No. 379 (finding that § 401 of the First Step Act does not apply retroactively to defendants sentenced before its enactment) (citing United States v. Jordan, 952 F.3d 160, 172 (4th Cir. 2020)); United States v. Fletcher, 2020 WL 2490025, at *2 (D. Md. May 14, 2020) (declining to consider whether the court could apply the changed sentencing regime under § 851 to a defendant sentenced prior to the First Step Act). Still, other courts have concluded that Fourth Circuit law authorizes them to apply § 851 changes retroactively, as "errors" in a defendant's sentencing. See, e.g., United States v. Bennett, 2020 WL 3037199, at *3 (D.S.C. June 5, 2020) (finding that "the First Step Act . . . requires the correction of a retroactive error in calculating the statutory penalties") (citing United States v. Chambers, 956 F.3d 667, 672 (4th Cir. 2020)). The court need not commit to one approach over the other here because it finds that the more prudent course is to consider Johnson's argument in the context of his request for a sentence reduction under

§ 3582(c)(1)(A)(i). As the court discusses below, Fourth Circuit law has recently become clear on that front.

### B. Relief Under § 3582(c)(1)(A)(i)

Before the court considers Johnson's First Step Act argument in the context § 3582(c)(1)(A)(i), the court addresses Johnson's request for immediate compassionate release. In the supplement to his motion, Johnson argues that his underlying conditions render him particularly susceptible to the COVID-19 pandemic, making his circumstances "extraordinary and compelling." Specifically, Johnson notes that he suffers from "stage II chronic kidney disease, atrial fibrillation, cardiac arrhythmia, hypertension, hyperlipidemia, open-angle glaucoma, as well as dizziness and diabetes[.]" ECF No. 1015 at 5 (citing ECF No. 1015-4). Indeed, the Centers for Disease Control ("CDC") consider several of these underlying conditions as conditions that increase a person's risk of experiencing severe symptoms as a result of contracting the COVID-19 virus. On the other hand, Johnson has already contracted and recovered from COVID-19, and according to the CDC, "Cases of reinfection with COVID-19 have been reported, but remain rare." "Reinfection with COVID-19," Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last visited June 2, 2021).

Moreover, the vaccination efforts at Johnson's facility have significantly lowered his risk of contracting COVID-19. According to the BOP, 545 staff members and 3,616 inmates at FCC Coleman, Johnson's facility, have been fully inoculated with a COVID-19 vaccine. "BOP: COVID-19 Update," Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited June 8, 2021). Likely as a direct result, the BOP lists zero

inmates and zero staff members at Johnson's facility as testing positive for the virus. Id. (last visited June 9, 2021). Thus, Johnson's risk of infection has significantly diminished. While there is evidence on both sides of the scale, the court need not determine whether Johnson's susceptibility to COVID-19 makes his circumstances extraordinary and compelling because, based on the facts the court discusses below, the sentencing factors codified in § 3553(a) do not justify his immediate release.[1]  Therefore, the court denies Johnson's motion to the extent that he seeks immediate release based on his alleged susceptibility to COVID-19.

However, the Fourth Circuit has recently given the court reason to consider Johnson's First Step Act argument, under which he seeks a partial reduction to his sentence, in the context of a motion to reduce sentence under § 3582(c)(1)(A)(i).[2]  Recent

---

[1] As the court discusses in greater depth below, the § 3553(a) sentencing factors ultimately weigh in favor of reducing Johnson's sentence to some extent; however, they do not justify reducing Johnson's sentence to time served, such that he would be subject to an immediate release from custody. The court cannot square a time-served sentence with Johnson's criminal significant criminal history and the seriousness of his offense. In other words, Johnson's request for immediate release, i.e. a sentence of time served, asks for a too drastic sentence reduction under the sentencing factors.

[2] Johnson does not contend in exact terms that the First Step Act's change to § 851's sentencing regime constitutes an extraordinary and compelling reason for relief under § 3582(c)(1)(A)(i). Nevertheless, the court resolves to construe Johnson's motion as a motion to reduce sentence under § 3582(c)(1)(A)(i) for a few reasons. First, Johnson's initial motion, which seeks relief pursuant to the First Step Act, clearly points to the changes in the § 851 sentencing regime as a basis for relief. ECF No. 997. While this motion did not invoke § 3582(c)(1)(A)(i), the court has a duty to liberally construe Johnson's pro se filings to allow for the development of a potentially meritorious case. Hughes v. Rowe, 449 U.S. 5, 9–10 (1980). Second, in her supplement to Johnson's initial motion, Johnson's counsel added a request for relief under § 3582(c)(1)(A)(i) and specifically noted that the court "may consider" the "change in the statutory penalty" under § 851. ECF No. 1015 at 5. Finally, Johnson and his counsel filed their respective memoranda without the benefit of McCoy. In short, Johnson laid out this ground for relief in bits and pieces throughout his papers. All that's left for the court to do is apply McCoy to connect the dots.

law authorizes the court to consider the changes to the § 851 sentencing regime brought about by the First Step Act as an extraordinary and compelling reason justifying a sentence reduction pursuant to § 3582(c)(1)(A)(i). On December 2, 2020, the Fourth Circuit decided McCoy, announcing two significant declarations. 981 F.3d at 271. First, the court definitively held that the First Step Act's changes to § 3582(c)(1)(A)(i) rendered the once-relevant policy statements codified in U.S.S.G. § 1B1.13 inapplicable, meaning that district courts "are empowered to consider any extraordinary and compelling reason for release that a defendant might raise," not just those included in the policy statements. Id. at 284 (quoting United States v. Brooker, 976 F.3d 228, 230 (2d Cir. 2020)) (emphasis in original). The Fourth Circuit went on find that the defendants[3] in McCoy were entitled to a sentence reduction based on "the severity of [their] § 924(c) sentences and the extent of the disparity between [their] sentences and those provided for under the First Step Act." Id. at 286. Therefore, McCoy authorizes district courts to consider the disparity between a defendant's sentence and the sentence he would have received under the First Step Act as an extraordinary and compelling reason to reduce that defendant's sentence pursuant to § 3582(c)(1)(A)(i). Importantly, the Fourth Circuit also made clear that defendants whose sentences would change under the First Step Act should not receive relief as a matter of right; instead, "courts should be empowered to relieve some defendants of those sentences on a case-by-case basis." Id. at 287 (quoting United States v. Bryant, 2020 WL 2085471, at *3 (D. Md. Apr. 30, 2020)). The court also offered a firm reminder that compassionate relief is limited "to truly extraordinary and compelling

---

[3] The Fourth Circuit consolidated multiple appeals in McCoy. 981 F.3d at 274 ("The defendants in these consolidated appeals . . . .").

cases," requiring a defendant to satisfy an "exceptionally high standard for relief." Id. at 287–88.

The sentencing disparities the Fourth Circuit faced in McCoy were the result of the First Step Act's changes to § 924(c)'s sentencing regime. Here, Johnson's sentencing disparity comes on the back of the First Step Act's changes to §§ 841 and 851's sentencing regime. The court finds that distinction inconsequential. The rationale and logic the Fourth Circuit espoused in McCoy with respect to § 924(c) applies with equal force to the similar sentence disparities brought about by First-Step-Act changes to §§ 841 and 851. Id. at 285–286 ("We think courts legitimately may consider, under the 'extraordinary and compelling reasons' inquiry, that defendants are serving sentences that Congress itself views as dramatically longer than necessary or fair."). Therefore, the courts finds that the disparity between the mandatory minimum sentence a defendant received under § 851 and the sentence that the defendant would face today can constitute an extraordinary and compelling reason worthy of a sentence reduction under § 3582(c)(1)(A)(i). At least one court in this circuit has agreed. United States v. Sappleton, 2021 WL 598232, at *3 (D. Md. Feb. 16, 2021) (finding the disparity between the mandatory minimum of life the defendant received under § 851 and the 15-year mandatory minimum he would face today to be extraordinary and compelling).

Turning back to Johnson, the court finds that the disparity between the sentence Johnson received and the one that would be imposed today constitutes an extraordinary and compelling reason justifying a sentence reduction. As the court described above, Johnson faced a mandatory minimum sentence of life imprisonment pursuant to §§ 841(b)(1)(A) and 851 when the court sentenced him. Now, pursuant to changes

promulgated under the First Step Act, Johnson would face a mandatory minimum of 15 years in prison, a far cry from the mandatory minimum life sentence he received. Like the disparities the Fourth Circuit faced in McCoy, the "enormous" disparity in this case between the sentence Johnson received and the one "Congress now believes to be an appropriate penalty" constitutes an extraordinary and compelling reason to grant relief. 981 F.3d at 285 (finding 200-month and 30-year sentencing disparities "extraordinary and compelling"). Accordingly, the court considers the sentencing factors under § 3553(a) to determine the extent of the reduction warranted here. 18 U.S.C. § 3582(c)(1)(A)(i).

### C.  Sentence Factors Under § 3553(a)

In determining whether a reduction is justified, 18 U.S.C. § 3553(a) requires a court to "impose a sentence sufficient, but not greater than necessary," considering the following factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for [the offense committed];
> [. . .]
> (5) any pertinent policy statement;
> [. . .]
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

Johnson was convicted based on his participation in a significant drug trafficking operation. Johnson assisted his co-defendant, drug kingpin Henry P. Bennett, Jr., ("Bennett") with receiving and delivering multi-ounce quantities of cocaine and crack to other local, street-level drug dealers. ECF No. 729 at ¶ 9. The presentence investigation report held Johnson responsible for "at least 15 kilograms, but less that 50 kilograms, of cocaine." Id. at ¶ 21. Johnson also has a significant criminal history. Johnson's drug trafficking activity began at a young age. In 1986, when he was 18 years old, Johnson was convicted of distribution of cocaine and received probation, which was ultimately revoked when he was arrested for selling drugs shortly thereafter. Id. at ¶ 29. Johnson was again convicted of significant drug-related crimes in 1987, id. at ¶¶ 30–31, and in 1992, id. at ¶ 34, the latter of which included a conviction for felony possession and possession of a firearm during a drug trafficking crime, id. While incarcerated on those federal drug and firearms offenses, Johnson was convicted in the Northern District of Georgia for possession of cocaine in federal prison on May 31, 1995, for which he received a 30-month concurrent sentence. Id. Johnson began his term of supervised release in 2005 and shortly thereafter committed the instant offense while on federal supervision after serving almost thirteen years in federal prison for his previous crimes. Id. at ¶¶ 11–21, 34–35. Therefore, the nature and circumstances of Johnson's offense as well as his criminal history weigh against drastically reducing Johnson's sentence.

On the other hand, Johnson's recent rehabilitative efforts give the court good reason to reduce his sentence to some extent, such that it reflects the sentence Johnson would receive today. Johnson has participated in and completed dozens of educational and vocational programs during his time in prison. ECF No. 1015-8 at 1–2. He has

submitted letters from two of those programs' advisors, each of whom attest to Johnson's dedication to and leadership within the programs. ECF No. 1015-9. Further, although Johnson garnered many disciplinary infractions in pervious terms of imprisonment, he has maintained a clean disciplinary record since his conviction in 2008 for the instant offense. ECF No. 1015-8. Therefore, Johnson's rehabilitative efforts weigh in favor of reducing his sentence.

More clearly, the need to avoid unwarranted sentence disparities among defendants with similar records who have been convicted of similar crimes weighs in favor of a sentence reduction.[4] As the court discussed at length above, Johnson's sentence is drastically harsher than the sentences of similarly situated defendants who are sentenced today. Further, Johnson's recommended sentence under the United States Sentencing Guidelines ("Guidelines") would be different were it calculated today. When the court sentenced Johnson, his Guidelines range recommended a sentence of 262 to 327 months.[5] In 2014, well after Johnson was sentenced, the Sentencing Commission issued Amendment 782, which reduced the Guidelines' base offense levels for a number of drug offenses. See U.S.S.G. App. C, Amdt. 782 (Supp. Nov. 2012–Nov. 2016). With the benefit of Amendment 782, Johnson's Guidelines range—were he sentenced today—

---

[4] Johnson's co-defendant, Bennett, provides an apropos example. In 2008, a jury convicted Bennett of several drug-trafficking crimes, two of which were identical to the crimes for which Johnson was convicted. Like it did in Johnson's case, the court sentenced Bennett to life imprisonment. No. 2:10-cr-0924-DCN-1, ECF No. 708. On January 19, 2017, President Barack Obama issued an executive grant of clemency to Bennett, among others, reducing his sentence from life imprisonment to a term of 273 months. Id., ECF No. 983 at 5. This order brings Johnson's sentence more in line with the sentence Bennett now serves.

[5] When Johnson was sentenced, his Guidelines range was superseded by his mandatory minimum sentence of life imprisonment. ECF No. 729 at ¶ 77.

would be 210 to 262 months. The court may consider this change to Johnson's Guidelines range in reducing Johnson's sentence. See 18 U.S.C. § 3553(a) (authorizing the court to consider the defendant's Guidelines range).

In light of the nature of Johnson's offense, his criminal history, his rehabilitative efforts, and the changes within the applicable sentencing regime, the court finds that a sentence at the high end of Johnson's amended Guidelines range is sufficient but not greater than necessary, and best comports with the § 3553(a) factors. Accordingly, the court grants Johnson's motion in part and reduces his sentence to a term of imprisonment of 262 months as to each count, to run concurrently. All other provisions of Johnson's sentence shall remain in force. Additionally, the following special conditions apply: (1) Johnson shall participate in a program of testing for substance abuse as directed by the U.S. Probation Officer until such time as he is released from the program, and (2) Johnson shall contribute to the costs of any treatment, drug testing, and/or location monitoring not to exceed an amount determined reasonable by the court approved U.S. Probation Office's Sliding Scale for Services and shall cooperate in securing any applicable third-party payment, such as insurance or Medicaid.

## IV.   CONCLUSION

For the foregoing reasons the court **GRANTS** the motion in part and **REDUCES** Johnson's sentence in accordance with this order.

**AND IT IS SO ORDERED.**

 

 

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**June 10, 2021**
**Charleston, South Carolina**