**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | No. 2:07-cr-0924-DCN-3 |
| | ) | |
| KENNETH J. JOHNSON, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

      This matter is before the court on defendant Kenneth J. Johnson's ("Johnson") motion to further reduce sentence, ECF No. 1061, and emergency motion for compassionate release, ECF No. 1065. For the reasons set forth below, the court denies both motions.

## I.   BACKGROUND

      On November 14, 2007, Johnson was named as one of twelve co-defendants in a fourteen-count superseding indictment. ECF No. 211. That indictment charged Johnson with conspiracy to possess with the intent to distribute five kilograms or more of cocaine and fifty grams or more of cocaine base, in violation of 21 U.S.C. § 846 ("Count One") and possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) ("Count Three"). On March 18, 2008, the government filed a notice of enhanced penalties pursuant to 21 U.S.C. § 851, informing Johnson that he was subject to increased penalties based on two prior drug-related convictions. The enhancements left Johnson subject to a mandatory minimum sentence of life imprisonment for Count One.

      Johnson's trial began on June 30, 2008. On July 2, 2008, a jury found Johnson guilty on both counts. ECF No. 568. On March 13, 2009, the court sentenced Johnson to life imprisonment as to Count One and a term of imprisonment of 360 months as to

Count Three. ECF No. 735. These sentences were set to run concurrently. Johnson filed an appeal with the United States Court of Appeals for the Fourth Circuit, which, on January 31, 2011, affirmed Johnson's conviction and sentence. United States v. Johnson, 415 F. App'x 495 (4th Cir. 2011).

On May 7, 2019, Johnson filed a pro se motion to reduce his sentence under § 404 of the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194, 5222 (2018). ECF No. 997. On July 8, 2020, Johnson, through court-appointed counsel, supplemented his motion and added a request for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 1015. On June 10, 2021, the court granted in part and denied in part the motion, reducing Johnson's sentence to a term of imprisonment of 262 months as to each count, to run concurrently (hereinafter, the "First Step Act Order"). ECF No. 1052.

On September 20, 2021, Johnson, proceeding pro se, filed a motion to further reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 1061. On December 10, 2021, Johnson filed a pro se motion to expedite his motion. ECF No. 1064. On January 14, 2022, Johnson filed a pro se motion styled as an emergency motion for immediate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 1065. Johnson filed a supplement to his emergency motion on January 21, 2022, ECF No. 1067, and supplemented his motion once more with additional supporting documents on February 3, 2022, ECF No. 1070. The United States of America (the "government") did not respond to either of Johnson's motions. The motions are ripe for review.

## II.  STANDARD

Generally, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Section 3582(c)(1)(A) provides an exception to this

general rule where "extraordinary and compelling reasons warrant such a reduction." Courts refer to requests under this section as motions for "compassionate release." United States v. Norris, 458 F. Supp. 3d. 383, 385 (E.D.N.C. 2020). Prior to the First Step Act, the law permitted only the Bureau of Prisons (the "BOP") to file motions for compassionate release. United States v. Dowdell, 669 F. App'x 662 (4th Cir. 2016). Section 603 of the First Step Act amended § 3582(c)(1)(A)(i), authorizing defendants themselves to file requests for compassionate release with the sentencing court after exhausting all available administrative remedies. United States v. Griggs, 462 F. Supp. 3d 610, 615 (D.S.C. 2020).

The determination of whether "extraordinary and compelling circumstances" warrant relief is within the discretion of the district court. United States v. Beck, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019). The Fourth Circuit clarified that district courts are empowered to "consider any extraordinary and compelling reason for release that defendant might raise." United States v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020) (emphasis in original) (quoting United States v. Brooker, 976 F.3d 228, 230 (2d Cir. 2020)). If the court finds that such circumstances warrant a reduction in a defendant's sentence, it must consider the factors set forth in § 3553(a) to determine whether such a reduction is justified. 18 U.S.C. § 3582(c)(1)(A). A defendant seeking compassionate release "has the burden of establishing that such relief is warranted." Griggs, 462 F. Supp. 3d at 615. Even after the changes to § 3582(c)(1)(A)(i) promulgated under the First Step Act, the burden remains "exceptionally high." McCoy, 981 F.3d at 288.

In the motions at issue, petitioner is proceeding pro se.[1] Pro se petitions should be construed liberally by the court and are held to a less stringent standard than those drafted by attorneys. See Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), cert. denied, 439 U.S. 970, 99 (1978). A federal district court is charged with liberally construing a petition filed by a pro se litigant to allow the development of a potentially meritorious claim. Boag v. MacDougall, 454 U.S. 364, 365 (1982).

## III.  DISCUSSION

Johnson makes two compassionate release requests to the court. In his first motion, Johnson argues that his rehabilitative efforts constitute extraordinary and compelling reasons and "support a further reduction of [his] sentences." ECF No. 1061 at 7. In his second motion, Johnson argues that a combination of his medical conditions and the supposed "inefficiency of the FDC-Miami medical department" amount to extraordinary and compelling reasons to reduce his sentence to time-served. ECF No. 1065 at 3.

**A. Exhaustion**

As a prerequisite to a motion for compassionate relief, a defendant must exhaust his available administrative remedies. The court may grant compassionate release on a motion from a defendant after: (1) defendant has fully exhausted his administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on his behalf, or (2) the

---

[1] As Johnson explains in his motion to further reduce sentence, Johnson was provided with court-appointed counsel and that counsel assisted with Johnson's first motion to reduce sentence, which the court granted in part and denied in part. After the court's order, Johnson became "[f]rustrated and tired" with counsel, ECF No. 1061 at 5, and filed a motion to dismiss appointed-counsel and appoint new counsel, which the court denied. ECF No. 1058.

4

lapse of thirty days from the receipt of such a request by the warden of the facility, whichever is earlier.  18 U.S.C. § 3582(c)(1)(A)(i).  Moreover, "[s]uccessive compassionate release motions must independently satisfy the exhaustion requirement," meaning a "defendant must demonstrate renewed compliance with the exhaustion requirements with each successive compassionate release motion filed."  United States v. Huitt, 2021 WL 2226486, at *2 (W.D.N.C. June 2, 2021) (collecting cases).  However, the Fourth Circuit recently held that the government may implicitly waive the exhaustion requirement.  See United States v. Muhammad, 16 F.4th 126, 129 (4th Cir. 2021) ("Although the statute plainly requires [the defendant] to complete certain steps before filing his motion in the district court, we understand this requirement to be non-jurisdictional, and thus waived if it is not timely raised.").  Here, while Johnson presented evidence that he filed an application to reduce his sentence with the warden on November 12, 2021, prior to filing his first motion for compassionate release, ECF No. 1065-1 at 7, he has failed to present evidence that he exhausted his administrative remedies with the BOP or that thirty days have passed since making such a request of the warden for his successive motions.  However, the government did not file a response to either successive motion, and, accordingly, it did not raise the issue of exhaustion.  Under Muhammad, the court finds that the administrative exhaustion issue has been implicitly waived.

      Therefore, the court proceeds to analyze the merits of each motion in turn, ultimately finding that neither motion presents extraordinary and compelling reasons justifying a further reduction in Johnson's sentence.

### B. Motion to Further Reduce Sentence

In his first motion, Johnson moves the court for relief based on his rehabilitative efforts, as evidenced by his "accomplishments and meritorious prison record." ECF No. 1061 at 8. In his motion, Johnson points out that he has been involved in several rehabilitative programs while incarcerated. These include his participation in the pilot program of the Challenge Program, his participation as a mentor upon graduating from said program, and his initiative in co-founding another self-improvement and motivational group. In August 2016, Johnson was transferred to Federal Correctional Complex Coleman Medium ("FCC Coleman"), and according to Johnson, he similarly sought out mentoring opportunities there as well.

While the court commends Johnson on his impressive achievements while incarcerated and his resolve to become a mentor for other inmates, "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason" warranting relief. U.S.S.G. § 1B1.13. Rather, "successful rehabilitation efforts can be considered as 'one among other factors' establishing extraordinary and compelling reasons for release." United States v. Harris, 2022 WL 636627, at *1 (4th Cir. Mar. 4, 2022) (citing McCoy, 981 F.3d at 286 n.9). District courts must review the defendant's rehabilitative efforts in combination with other relevant circumstances when conducting the extraordinary and compelling reasons analysis. Id. However, Johnson's motion for further reduction of his sentence raises no other extraordinary and compelling circumstances beyond his rehabilitation. Much more importantly, Johnson's rehabilitative efforts were factors already raised and considered by the court when it initially decided to reduce Johnson's sentence. In the First Step Act Order, the court determined that a sentencing disparity

created by the First Step Act met the extraordinary and compelling reasons standard, and the court proceeded to analyze the sentencing factors set forth in 18 U.S.C. § 3553(a). Under those factors, the court wrote:

> Johnson's recent rehabilitative efforts give the court good reason to reduce his sentence to some extent, such that it reflects the sentence Johnson would receive today. Johnson has participated in and completed dozens of educational and vocational programs during his time in prison. ECF No. 1015-8 at 1–2. He has submitted letters from two of those programs' advisors, each of whom attest to Johnson's dedication to and leadership within the programs. ECF No. 1015-9. Further, although Johnson garnered many disciplinary infractions in pervious terms of imprisonment, he has maintained a clean disciplinary record since his conviction in 2008 for the instant offense. ECF No. 1015-8. Therefore, Johnson's rehabilitative efforts weigh in favor of reducing his sentence.

ECF No. 1052 at 11–12. In his motion to further reduce his sentence, Johnson requested that the court conduct a "re-analysis" of the § 3553(a) factors in light of his rehabilitation. ECF No. 1061 at 8. However, Johnson does not provide any new evidence of rehabilitative efforts that were not already reflected in the court's First Step Act Order from June 10, 2021. The court has reviewed the documentation provided by Johnson and it appears to largely consist of the same records and testimony that Johnson submitted in his first motion. In other words, those same circumstances have already been considered by the court, and they are reflected in the court's decision to reduce his sentence to the sentence he would have received under 21 U.S.C. § 851, as amended by the First Step Act. Additionally, after he filed his motion for a further reduction in his sentence, Johnson was transferred to the Federal Detention Center in Miami ("FDC Miami"). The court has no reason to doubt that Johnson will continue to seek out ways to improve both himself and others through programs and mentorship opportunities at his new address. However, to the extent Johnson argues that his continued exemplary behavior warrants another reduction in his sentence, the court notes that its prior resentencing weighed his

7

years of positive behavior against other factors, like the nature and circumstances of Johnson's offense and his significant criminal history, which "weigh[ed] against drastically reducing Johnson's sentence." Id. at 11. Any continued rehabilitative efforts since the court issued its order are certainly commendable, but they do not alter the court's calculus. Therefore, the court denies Johnson's motion to further reduce his sentence.

### C. Motion for Immediate Release for Time Served

Next, the court considers Johnson's third compassionate release motion: his emergency motion to reduce his sentence to time-served. In this motion, Johnson mostly focuses on FDC Miami's treatment of his medical conditions. The court discusses each of the concerns raised by Johnson, ultimately finding that none warrant relief.

First, Johnson argues that he suffers from "a myriad of medical conditions" and those conditions, in combination with purported shortcomings in FDC Miami's medical units, make him particularly susceptible to severe illness due to COVID-19. ECF No. 1065 at 2–3. In a supplemental brief to the court, Johnson requested, in the alternative, an order granting a special condition for supervised release that would allow him to serve one year of home confinement with electronic monitoring.

Johnson is fifty-three years old and suffers from "stage II chronic kidney disease, atrial fibrillation, cardiac arrhythmia, hypertension, hyperlipidemia, open-angle glaucoma and prediabetes." ECF No. 1065 at 2. Once again, these factors were raised and considered by the court in its First Step Act Order. There, the court wrote:

> Johnson notes that he suffers from 'stage II chronic kidney disease, atrial fibrillation, cardiac arrhythmia, hypertension, hyperlipidemia, open-angle glaucoma, as well as dizziness and diabetes[.]' ECF No. 1015 at 5 (citing ECF No. 1015-4). Indeed, the Centers for Disease Control ("CDC")

8

> consider several of these underlying conditions as conditions that increase a person's risk of experiencing severe symptoms as a result of contracting the COVID-19 virus.

ECF No. 1052 at 6 (alteration in original). The court proceeded to find that since Johnson had previously contracted and recovered from COVID-19, and since the vaccination efforts at FCC Coleman appeared to be well-coordinated, Johnson's risk of contracting COVID-19 was not an extraordinary and compelling circumstance. As such, the court considered whether a reduced sentence was justified based on other circumstances—namely the sentencing disparity.

Again, the court agrees with Johnson that he has underlying conditions that, according to the CDC, place him at a heightened risk of serious illness if he were to contract COVID-19. However, as before, the court finds that those circumstances do not rise to the level of justifying compassionate release. In addition to the fact that Johnson has already contracted and recovered from COVID-19, Johnson disclosed in his latest motion that he is also vaccinated.[2] See ECF No. 1065 at 7 (indicating Johnson has been "inoculated with two shots of the COVID-19 Pfizer vaccine"). Studies indicate that the Pfizer vaccine is ninety-five percent effective at preventing COVID-19, including in people with medical comorbidities associated with high risk of severe illness. Pfizer-BioNTech COVID-19 Vaccine Overview and Safety, Centers for Disease Control &

---

[2] In a supplement to his motion dated January 10, 2022, Johnson wrote that he requested a booster shot but that FDC Miami's medical unit had yet to provide one to him. ECF No. 1067 at 2. The court commends Johnson's initiative in seeking a booster shot, and it appears that the BOP now has the resources to offer them to every inmate. COVID-19 Vaccine Implementation, BOP, https://www.bop.gov/coronavirus/ (last visited May 4, 2022) ("Inmates have also been offered booster shots in accordance with CDC guidance."). However, if Johnson has still been denied an opportunity to receive his booster shot, that fact, while unfortunate, would not amount to an extraordinary and compelling circumstance in light of the other factors contributing to a minimized risk.

Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Pfizer-BioNTech.html (last updated Apr. 27, 2022); see also United States v. Harris, 2021 WL 2964254, at *4 (W.D.N.C. July 14, 2021) (citing FDA Decision Memorandum, Pfizer-BioNTech COVID-19 Vaccine—Dec. 10, 2020, https://www.fda.gov/media/144245/download).  Moreover, while "[c]ourts in this district and elsewhere have found, particularly at the height of the pandemic, that the [] pandemic may constitute an extraordinary and compelling reason [] in conjunction with specific risk factors such as age or medical condition," in light of the lower rates of infection and higher rates of vaccination in prisons, courts in this district are now finding underlying conditions no longer extraordinary and compelling.  United States v. Cunningham, 2021 WL 2411134, at *2 (D.S.C. June 14, 2021).  "In the absence of evidence suggesting a particular risk of infection at the facility where a defendant is housed, the overall reduction in cases may indicate that the COVID-19 pandemic no longer constitutes an exceptional and compelling reason for compassionate release even in conjunction with underlying medical conditions."  United States v. Raap, 2021 WL 2328048, at *2 (D.S.C. June 8, 2021); see United States v. Wolfe, 2021 WL 2291894, at *2 (D.S.C. June 4, 2021); United States v. Moses, 2021 WL 2117159, at *2 (D.S.C. May 25, 2021); accord United States v. Moore, 2022 WL 453536, at *5 (S.D. W. Va. Feb. 14, 2022) ("[P]ersuasive authority suggests that proving a particularized susceptibility to a severe case of COVID-19 in a post-vaccination world requires significantly more than it did in a pre-vaccination world.").

To be sure, the court's prior ruling was premised in part on the vaccination efforts at FCC Coleman, Johnson's facility at the time.  Johnson is now at FDC Miami, and in

10

his emergency motion, he claims that the facility is ill-equipped to handle breakouts of COVID-19 like the one that occurred in January 2022. However, in the same motion, Johnson specifically acknowledged that the facility "implemented a[n] enhanced operational plan to create social distancing amidst detainee's [sic] and inmates." ECF No. 1065 at 2. The available public information on FDC Miami also weighs against a determination that extraordinary and compelling reasons warrant a reduction in his sentence. According to the BOP COVID-19 case tracker, FDC Miami currently reports seven COVID-19 infections among its inmates and zero infections among its staff.[3] Confirmed Active Cases at 69 BOP Facilities and 20 RRCs, BOP, https://www.bop.gov/coronavirus/ (last visited May 4, 2022). The BOP has inoculated 1,258 inmates and 148 employees at FDC Miami, reducing the risk of the existing cases spreading drastically. Id. Johnson argues in his motion that due to a "serious staff shortage," there has been a lack of mass testing, and as a result, many inmates are going to work sick. The court recognizes that the only predictable element of this virus is its unpredictability, but as it currently stands, the greatly diminished number of COVID-19 infections at FDC Miami, coupled with the strong vaccination efforts of the BOP, lead the court to conclude that Johnson fails to establish that COVID-19 is an extraordinary and compelling reason that warrants a reduction in his sentence.

---

[3] Johnson writes in a supplement to the court that FDC Miami is "downplaying the actual number of positive cases with both inmates and staff" and asks that the court "not be persuaded by such dishonesty." ECF No. 1070 at 4. The court has no reason to doubt the validity of the BOP's officially-published statistics, and other courts routinely cite the BOP's numbers. See United States v. West, 2020 WL 9349557, at *3 (S.D. Fla. Dec. 10, 2020) (citing BOP COVID-19 case numbers at FDC Miami).

11

Johnson's emergency motion for compassionate release further incorporates by reference Johnson's motion to expedite his second motion for compassionate release. In the motion to expedite, Johnson cites health concerns that are independent of his risk from contracting COVID-19. Specifically, Johnson states that he has had to continually remind the pharmacy at FDC Miami to refill his Apixaban prescription, which is used to manage his cardiac arrhythmia. As evidence, Johnson provides a series of emails that he wrote to the FDC Miami staff requesting that his prescription be refilled. ECF No. 164-1 at 2–11. However, Johnson does not provide the responses to these emails, and he provides no other evidence supporting his claims that the prescriptions were filled in an untimely way. Johnson also cites an incident from 2021 when he requested a check-up with the facility's cardiologist to seek an opinion on his erratic heartbeat but supposedly failed to receive a response. Id. at 12–13. Although the court determined that the administrative exhaustion issue had been waived, the court notes that this is one of the difficulties presented when a defendant hurdles the administrative review process. The BOP is in a far better position to evaluate whether Johnson's medical needs are being met, and without their review, the court is unable to determine—without making unwarranted conjectures—that Johnson's medical needs are not being met. See United States v. Read-Forbes, 454 F. Supp. 3d 1113, 1118 (D. Kan. 2020) (observing that "the BOP is in a better position to initially determine defendant's medical needs," the specific risk presented by COVID-19, and other factors); see also United States v. Yansane, 2020 WL 6891397, at *2 (D. Md. Nov. 24, 2020) (agreeing with the defendant that an "apparent lack of treatment for his thyroid condition [wa]s troubling," recommending "that the BOP provide any necessary treatment promptly," but finding that the lack of

12

treatment does not present an extraordinary and compelling reason warranting a reduced sentence). Therefore, the court does not find that the purported inefficiencies within FDC Miami's medical division warrant a reduction of Johnson's sentence to time served—or any further reduction at all.

Johnson's emergency motion and motion to expedite also request compassionate release because Johnson claims that his visitation privileges have been impeded. According to Johnson, his counselor failed to activate his visitation list upon his transfer and has not provided Johnson with his visitation rights. As Johnson noted himself, however, visitation at FDC Miami has necessarily been curtailed to account for COVID-19. See ECF No. 1065 at 2 (noting that FDC Miami cancelled social visitations due to an outbreak of COVID-19). Other courts have previously observed that a suspension of visitation rights for prisoners due to COVID-19 does not present extraordinary and compelling circumstances. See United States v. Miller, 2020 WL 5259065, at *5 (D. Conn. Sept. 2, 2020) (noting that the defendant's inability to receive visits from family does not constitute an extraordinary and compelling reason for release); Klatch v. United States, 2020 WL 1694299, at *1 n.1 (M.D. Fla. Apr. 7, 2020) (finding that defendant's list of grievances, which included the suspension of visitation rights for prisoners, did not constitute extraordinary and compelling circumstances). Even if COVID-19 were not the reason for the limitation on Johnson's visitation rights, Johnson has failed to show that such restrictions rise to the level of becoming extraordinary and compelling. See Miller, 2020 WL 5259065, at *5 (noting that "many inmates face similar restrictions on in-person visitation"). In any event, the court again emphasizes that the BOP is in a better position to address Johnson's concerns.

Finally, in a letter to the court on February 28, 2022, Johnson asked the court to weigh the recent release of his co-defendant, Henry Bennett ("Bennett"), in deciding on his pending motions. The court believes that Johnson is mistaken. President Barack Obama issued an executive grant of clemency to Bennett, among others, reducing his life sentence to a term of 273 months. United States v. Bennett, No. 2:07-cr-00924-DCN-1 (D.S.C.) (ECF No. 983 at 5). Bennett is currently scheduled to be released from the BOP on July 24, 2027, and his request for compassionate release was denied on November 23, 2020. See id. (ECF No. 1036).[4] On January 11, 2022, the Fourth Circuit affirmed the court's denial of Bennett's motion for compassionate release. Id. (ECF No. 1066). The court fails to see any indication that Bennett has been released from custody. Without any support for Johnson's claim, the court is unable to consider it. See United States v. Rodgers, 2020 WL 3404737, at *2 (E.D.N.C. June 19, 2020) ("The court will not grant compassionate release based solely on defendant's unsupported assertions . . . ."). Moreover, the court's order reducing Johnson's sentence pursuant to the First Step Act "brought Johnson's sentence more in line with the sentence that Bennett now serves," and, based on the information before it, the court does not find a flagrant disparity between Bennett and Johnson's sentences sufficient to warrant a further reduction by this court. ECF No. 1052 at 12.

Even it made a finding of extraordinary and compelling reasons, the Court would still need to consider the factors set forth in 18 U.S.C. § 3553(a). In the First Step Act

---

[4] Additionally, the BOP has a website that allows the public to locate the whereabouts of federal inmates. With the caveat that the website acknowledges that "an inmate's release date may not be up-to-date," the website confirms that Bennett is incarcerated at Atlanta RRM and schedule for release on February 21, 2027. Find an inmate, BOP, https://www.bop.gov/inmateloc/ (last visited May 4, 2022).

Order, the court previously analyzed the § 3553(a) factors, including the nature and circumstances of the offense, Johnson's criminal record, his rehabilitative efforts, and the need to avoid inconsistent sentences. As the court explained earlier, the circumstances described by Johnson in his subsequent motions have not altered the court's analysis, and therefore, Johnson's motion to reduce his sentence is denied.

## IV.   CONCLUSION

For the reasons set forth above, the court **DENIES** the motions.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**May 4, 2022
Charleston, South Carolina**